UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

SERGIO FRANCISCO PUEBLA PALOMO,

     Plaintiff,

  -against-        5:15-CV-1536 (LEK/TWD)

JOSEPH G. "JOEY" DEMAIO, *et al.*,

     Defendants.

_____

**MEMORANDUM-DECISION AND ORDER**

## I. INTRODUCTION

Plaintiff Sergio Francisco Puebla Palomo, a musician, originally brought an action against defendants Joseph G. "Joey" DeMaio, Circle Song Music, LLC, God of Thunder Productions, Ltd., Magic Circle Films International, LLC, Magic Circle Music Guitars, LLC, Magic Circle Films International, Ltd., Magic Circle Entertainment, Ltd., Magic Circle Music, Ltd., Caromark, LLC, and John Does 1–10, alleging that Defendants wrongfully refused to return Palomo's musical equipment to him after he terminated his employment with Defendants in March 2013. Dkt. No. 1 ("Complaint"). On April 17, 2017, Defendants ("Counter-Plaintiffs") filed counterclaims against Palomo ("Counter-Defendant"), alleging breach of contract and unjust enrichment and seeking injunctive relief based on Counter-Defendant's alleged misappropriation of their property. Dkt. No. 39 at 1–35[1] ("Amended Counterclaims") ¶¶ 144–230. Presently before the Court is Counter-Defendant's motion to dismiss the Amended Counterclaims, Dkt. No. 45 ("Motion to Dismiss"), and Counter-Plaintiffs' motion to amend the

_____

[1] The cited page numbers for this document refer to those generated by the Court's electronic filing system ("ECF").

Amended Counterclaims to add unfair competition and libel per se counterclaims, Dkt. No. 83

("Amendment Motion"). For the reasons that follow, the Motion to Dismiss is granted in part and

denied in part, and the Amendment Motion is denied.

## II.    BACKGROUND

### A.  Factual History

The allegations discussed in this section are drawn from the Amended Counterclaims.

Counter-Plaintiffs conduct "business pertaining to the music industry," including "producing,

promoting, licensing, distributing, recording, [and] touring." Am. Countercls. ¶ 98. Beginning in

June 2005, Counter-Plaintiffs offered to support Counter-Defendant's work visa by "employ[ing

him] as a keyboardist at a salary of $1,000.00 per week." Id. ¶ 101. Counter-Defendant also

allegedly entered into five written and one oral contracts between 2007 and 2011 with various

counter-plaintiffs. Id. ¶¶ 102–16. The terms of those agreements are described below.

*1.  2007 Agreements*

In 2007, Magic Circle Music entered into a written agreement with Counter-Defendant

governing his creation of a new HolyHell album. Dkt. No. 39 at 36–41 ("2007 Agreement") at

37.[2] The 2007 Agreement provided that Counter-Defendant "shall comply with all of [Magic

Circle Music's] instructions and requests in connection with [Counter-Defendant's] services

hereunder," and that Magic Circle Music would pay Counter-Defendant $20,000 for his work in

the creation of the album. Id. at 37–38. The 2007 Agreement also provided that all of Counter-

Defendant's work product created in connection with his performance was Magic Circle Music's

property. Id. at 37.

---

[2]  The cited page numbers for this document refer to those generated by ECF.

Also in 2007, Magic Circle Music, God of Thunder Productions, and Counter-Defendant entered into a written "service and nondisclosure agreement" prohibiting Counter-Defendant from disclosing confidential information belonging to the two counter-plaintiffs "or [their] affiliates" and requiring that Counter-Defendant, "upon termination of [his] services . . . surrender to [Magic Circle Music and God of Thunder Productions] all property belonging to [the two counter-plaintiffs] and [their] affiliates." Dkt. No. 39 at 42–44 ("2007 NDA") at 43.[3] The 2007 Agreement defines "affiliates" as including numerous entities, including counter-plaintiff Circle Song Music. Id. After Counter-Defendant resigned in March 2013, Counter-Plaintiffs requested the return of their property, "including that which pertains to the 2007 Agreement," and Counter-Defendant "refused to return" this property. Am. Countercls. ¶¶ 141, 153–54. The withheld property included "demos," "audio recordings" and "sheet music," as well as "[c]orrespondence with business and industry contacts," "compositions," "notes," "[p]roduction plans," "[l]ogs and records," and "other work product." Id. ¶ 122. The withheld property "[was] intended to produce or aid in the production of revenue for Counter-Plaintiffs," and "to reduce expenses or aid in the reduction of expenses of Counter-Plaintiffs." Id. ¶¶ 157–58.

### 2. 2009 Agreement

In 2009, Magic Circle Music entered into a written agreement with Counter-Defendant that "cover[ed his] services in connection with his live performance(s)" in a number of concerts. Dkt. No. 39 at 45–49 ("2009 Agreement") at 46.[4] Counter-Defendant refused to return company

---

[3] The cited page numbers for this document refer to those generated by ECF.

[4] The cited page numbers for this document refer to those generated by ECF.

property acquired in connection with the 2009 Agreement after resigning. Am. Countercls. ¶ 123. Counter-Plaintiffs list the same categories of withheld property described above, and allege the same impact on their revenues and expenses. Id. ¶¶ 123, 169–70.

### 3.  2010 Agreements

In 2010, Magic Circle Music entered into a written agreement with Counter-Defendant "in connection with his live performance(s) at the Death To Infidels World Tour 2010." Dkt. No. 39 at 50–54 ("2010 Agreement") at 51. The 2010 Agreement required Counter-Defendant to "comply with all of [Magic Circle Music's] instructions," and designated all of Counter-Defendant's work product as Magic Circle Music's property. Id. Also in 2010, God of Thunder Productions and Magic Circle Films International, Ltd. entered into a written service and nondisclosure agreement with Counter-Defendant that was largely identical to the 2007 NDA. Dkt. No. 39 at 55–57 ("2010 NDA").[5] Counter-Defendant refused to return company property acquired in connection with the 2010 Agreement. Am. Countercls. ¶ 124. Counter-Plaintiffs list the same categories of withheld property described above, and allege the same impact on their revenues and expenses. Id. ¶¶ 124, 183–84.

### 4.  2011 Agreement

In 2011, Counter-Defendant and Counter-Plaintiffs entered into an oral agreement ("2011 Agreement"). Id. ¶ 116. Under the 2011 Agreement, Counter-Defendant agreed to produce a studio album called "Darkness Visible," which was to contain ten "newly written, fully recorded songs." Id. ¶ 117. Counter-Defendant was also required to "produce cover artwork, booklet, label, and CD inlays for" Darkness Visible and "a new website for HolyHell." Id. Counter-

---

[5]  The cited page numbers for this document refer to those generated by ECF.

Plaintiffs state that "[t]he 2011 Agreement was supported by adequate consideration in keeping with the usual and ordinary consideration exchanged between the parties." Id. ¶ 190.

Counter-Plaintiffs allege that Counter-Defendant "implicitly conferred upon Counter-Plaintiffs exclusive ownership rights" of his work product, as he did under the 2007, 2009, and 2010 agreements. ¶ 119. He also "implicitly agreed to surrender . . . all property of Counter-Plaintiffs" at the end of his employment. Id. Counter-Defendant produced only three written songs, did not produce any cover art for Darkness Visible, and did not produce a new website. Id. ¶¶ 191–93. Counter-Defendant refused to return company property acquired in connection with the 2011 Agreement. Id. ¶ 125. Counter-Plaintiffs list the same categories of withheld property as described above, and allege the same impact on their revenues and expenses. Id. ¶¶ 125, 199–200.

### 5. Counter-Defendant's Post-Resignation Activities

Counter-Plaintiffs allege that they "have spent large sums of money on research and development of certain business practices, business models, marketing, contractual relationships, and other related research in the music industry," which they collectively call "[t]rade [s]ecrets." Id. ¶¶ 205–06. Some of these trade secrets were contained in computer files and documents that were in Counter-Defendant's "sole possession" during his employment. Id. ¶ 207. Counter-Plaintiffs state that Counter-Defendant refused to surrender this confidential information after he resigned, and he used this information "in the development of his own musical career and the development of other third parties' musical careers." Id. ¶ 215.

Counter-Defendant also recorded a song called "Invictus" while working for Counter-Plaintiffs, and in an April 2014 internet post, he "and/or his band, HolyHell, represented that

'Invictus' was a '[b]onus track taken off'" Darkness Visible. Id. ¶ 133. Counter-Defendant has also allegedly "registered Mexican copyrights for thirteen . . . compositions under the title 'Darkness Visible,'" and several of those compositions have the same titles as songs first recorded for Counter-Plaintiffs' Darkness Visible album. Id. ¶ 134.

### B.  Procedural History

Counter-Plaintiffs originally filed counterclaims on February 13, 2017. Dkt. No. 22 ("Original Counterclaims"). Counter-Defendant moved to dismiss the Original Counterclaims, Dkt. No. 29, and Counter-Plaintiffs amended their counterclaims, Am. Countercls. On May 1, 2017, Counter-Defendant moved to dismiss the Amended Counterclaims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Mot. to Dismiss. Counter-Plaintiffs filed a response, Dkt. No. 55 ("Response"), and Counter-Defendant filed a Reply, Dkt. No. 57 ("Reply"). On October 2, 2017, Counter-Plaintiffs moved to further amend their counterclaims, Amendment Mot., and Counter-Defendant opposed that motion, as well, Dkt. No. 85 ("Amendment Opposition").

## III.    LEGAL STANDARD

### A.  Motion to Dismiss

To survive a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A court must accept as true the factual allegations contained in a complaint and draw all inferences in favor of the nonmoving party. Allaire Corp. v. Okumus, 433 F.3d 248, 249–50 (2d Cir. 2006). Plausibility,

however, requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct]." Twombly, 550 U.S. at 556.

The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. (quoting Twombly, 550 U.S. at 555). Where a court is unable to infer more than the mere possibility of the alleged misconduct based on the pleaded facts, the pleader has not demonstrated that she is entitled to relief and the action is subject to dismissal. Id. at 678–79.

**B. Amendment Motion**

Where, as here, a party has amended its pleading once, Rule 15 of the Federal Rules of Civil Procedure provides that a party may amend its pleading again "with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a). "[L]eave to amend should be freely given . . . '[i]n the absence of any apparent or declared reason—such as . . . futility of amendment.'" Rusyniak v. Gensini, 629 F. Supp. 2d 203, 212 (N.D.N.Y. 2009) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)). "An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to" Rule 12(b)(6). Lucente v. Int'l Bus. Machs. Corp., 310 F.3d 243, 258 (2d Cir. 2002). "The test then with respect to futility is whether or not the proposed amendment states a claim upon which relief can be granted." Henriquez v. Kelco Landscaping, Inc., 299 F.R.D. 376, 378 (E.D.N.Y. 2014) (citing Lucente, 310 F.3d at 258).

IV.    **DISCUSSION**

   **A.  Motion to Dismiss**

      *1.  Breach of Contract*

A breach of contract claim under New York law requires a plaintiff to show "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc., 837 F. Supp. 2d 162, 188–89 (S.D.N.Y. 2011) (quoting Harsco Corp. v. Segui, 91 F.3d 337, 348 (2d Cir. 1996)). Counter-Plaintiffs allege that Counter-Defendant breached the 2007, 2009, 2010, and 2011 Agreements, and the 2007 and 2010 NDAs. Am. Countercls. ¶¶ 144–202.

         a.  Parties to the Written Agreements

Counter-Defendant argues that only Magic Circle Music can allege breach of the 2007, 2009, and 2010 Agreements. Dkt. No. 45-1 ("Dismissal Memorandum") at 5. The Court agrees. Magic Circle Music is the only counter-plaintiff that is a party to these Agreements. 2007, 2009, 2010 Agreements. A claimant that is not a party to a contract or an intended beneficiary generally cannot enforce the obligations of that contract. Edwards v. MHS Holdings Corp., No. 90-CV-387, 1994 WL 383221, at *5 (N.D.N.Y. July 15, 1994) (holding that amending complaint to include breach of contract claim was futile because plaintiff was not a party to the agreement and no contract language indicated that plaintiff was an intended beneficiary). The 2007, 2009 and 2010 Agreements mention no counter-plaintiff other than Magic Circle Music, and contain no language indicating that any counter-plaintiff was an intended beneficiary of the Agreements.

Counter-Plaintiffs' argument that "the Counterclaim-Plaintiffs are all affiliated entities,

and constitute a single employer," Resp. at 5, is unavailing. The "single employer doctrine" is a doctrine used in National Labor Relations Board decisions, Arculeo v. On-Site Sales & Mktg., LLC, 425 F.3d 193, 198 n.6 (2d Cir. 2005), and provides for the "impos[ition of] liability for labor infractions where two nominally independent entities do not act under an arm's length relationship," Dias v. Cmty. Action Proj., Inc., No. 07-CV-5163, 2009 WL 595601, at *2 (E.D.N.Y. Mar. 6, 2009). Courts have not used the single employer doctrine to provide an avenue for non-parties to gain standing to allege breach of contract. Therefore, only Magic Circle Music is permitted to allege breach of the 2007, 2009, and 2010 Agreements.

Turning to the NDAs, Magic Circle Music and God of Thunder Productions are the only counter-plaintiff parties to the 2007 NDA, 2007 NDA at 43, and God of Thunder Productions and Magic Circle Films International, Ltd. are the only counter-plaintiff parties to the 2010 NDA, 2010 NDA at 56. Counter-Plaintiffs assert that these Agreements "specifically identify the other Counterclaim-Plaintiffs as interested parties," and, thus, as "intended beneficiaries." Resp. at 6. This is only partially correct. A party is an intended beneficiary and can enforce the obligations of a contract if it can establish "(1) the existence of a valid and binding contract between other parties, (2) that the contract was intended for its benefit, and (3) that the benefit to it is sufficiently immediate." Gerszberg v. Li & Fung (Trading), Ltd., 215 F. Supp. 3d 282, 291 (S.D.N.Y. 2016).

Circle Song Music is designated as an "affiliate" of the 2007 NDA, 2007 NDA at 39, and Circle Song Music and Magic Circle Music are designated as affiliates of the 2010 NDA, 2010 NDA at 56. Because Counter-Defendant does not dispute the validity of the NDAs and because each NDA requires Counter-Defendant to "develop [his] best efforts to advance the interests

of . . . [the] affiliates," 2007 NDA at 43; 2010 NDA at 56, it is plausible that Circle Song Music is an intended beneficiary of both NDAs, and that Magic Circle Music is an intended beneficiary of the 2010 NDA. No other counter-plaintiff is mentioned in the NDAs, and the Court rejects Counter-Plaintiffs' argument that the NDAs' vague reference to "any other affiliates" suggests that all Counter-Plaintiffs are intended beneficiaries. Resp. at 6. Therefore, Magic Circle Music, God of Thunder Productions, and Circle Song Music may allege breach of the 2007 NDA. These counter-plaintiffs, along with Magic Circle Films International, Ltd., may also allege breach of the 2010 NDA. Counter-Defendant's Motion to Dismiss is granted with respect to all other allegations regarding breach of the written Agreements. The Court now addresses whether the remaining counter-plaintiffs sufficiently allege breach of the written Agreements.

### b.  Breach of the Written Agreements

#### i. Breach

The 2007 and 2010 NDAs required Counter-Defendant, upon termination of employment, to "surrender . . . all . . . property belonging to Magic Circle Music [and God of Thunder Productions and their] affiliates." 2007 NDA at 43; 2010 NDA at 56. Counter-Plaintiffs allege that Counter-Defendant breached these provisions by failing to "return all [c]ompany [p]roperty" when he resigned, and they list the categories of correspondence and work product that they claim he wrongfully withheld. Am. Countercls. ¶¶ 121–25, 146–85. They further allege that Counter-Defendant's withholding of company property after Counter-Plaintiffs demanded its return breached the provisions in the 2007, 2009, 2010 Agreements requiring Counter-Defendant to "comply with all of [Magic Circle Music's] instructions and requests in connection with [his] services." Id. ¶¶ 149, 163, 175.

10

Counter-Defendant asserts that Counter-Plaintiffs fail to "allege[] any facts showing that [he] breached" the "*non-disclosure provisions* of the 2007, 2009, and 2010 Agreements and the 2007 and 2010 NDAs." Dismissal Mem. at 6–7 (emphasis added). However, Counter-Plaintiffs state that Counter-Defendant retained company property in violation of his obligation to return the property, not that he breached the contracts' non-disclosure provisions. The Court is satisfied that Counter-Plaintiff's straightforward allegations that Counter-Defendant withheld company property and refused to comply with Magic Circle Music's request to return the property alleges plausible breaches of the 2007, 2009, and 2010 Agreements and the 2007 and 2010 NDAs. See Webcraft Tech, Inc. v. McCaw, 674 F. Supp. 1039, 1043 (S.D.N.Y. 1987) (stating that defendant's continued possession of company property violated a contract provision requiring departing employees to return "all memoranda, notes . . ., and other documents . . . concerning any phase of [plaintiff's] business") (second alteration in original).

### ii. Damages

Counter-Defendant also argues that Counter-Plaintiffs fail to adequately plead damages resulting from the breach of the written Agreements. Dismissal Mem. at 8. He states that Counter-Plaintiffs' allegation that they suffered "damages in excess of $160,000 [for the breach of each written Agreement] . . . is not an actual allegation showing damages pled with facts," and that "Counter[]-Plaintiffs otherwise do not attempt to allege facts relating to how [Counter-Defendant]'s alleged breaches have caused any damages." Id. at 8–9. On the contrary, Counter-Plaintiffs state, with respect to each of the allegedly breached written agreements, that the company property withheld by Counter-Defendant "is intended to produce or aid in the production of revenue for Counter-Plaintiffs, including . . . album sales, licensing revenue,

11

touring revenue, merchandising revenue, [and] other related revenue(s)," and that the property is "intended to reduce expenses . . . of Counter-Plaintiffs." Am. Countercls. ¶¶ 157–58, 169–70, 183–84.

It is true that "[a] claim for breach of contract must rest on more than a conclusory allegation that the defendant's breach caused damages, even where the exact amount of damages is alleged." Miller v. HSBC Bank USA, N.A, No. 13-CV-7500, 2015 WL 585589, at *4 (S.D.N.Y. Feb. 11, 2015). However, Counter-Plaintiffs "need not, at this stage, specify the measure of damages nor plead . . . [specific] proof of causation." Errant Gene Therapeutics, LLC, v. Sloan-Kettering Inst. for Cancer Research, No. 15-CV-2044, 2016 WL 205445, at *7 (S.D.N.Y. Jan. 15, 2016). Counter-Plaintiffs' allegations regarding damages lack specifics, but permit a plausible inference that deprivation of company property could have resulted in increased expenses and foregone revenue. For instance, Counter-Defendant may have refused to return song recordings that Counter-Plaintiffs could otherwise have sold and monetized, or refused to return documents containing proprietary research that Counter-Plaintiffs could have implemented into a business strategy to reduce expenses. See Comfort Inn Oceanside v. Hertz Corp., No. 11-CV-1534, 2011 WL 5238658, at *8 (E.D.N.Y. Nov. 1, 2011) (holding that Comfort Inn's allegation that Hertz's failure to provide Comfort Inn with rental cars caused a "loss of revenue" sufficiently pled damages even though Comfort Inn did "not fill in all the blanks as to how Hertz's alleged breach resulted in the damages it asserts"); Smith McDonnell Stone & Co. v. Delicato Vineyards, No. 94-CV-6474, 1995 WL 375918, at *4 (S.D.N.Y. June 22, 1995) (holding that allegations that breach reduced company value and increased "the market position of a direct competitor" were sufficient to survive dismissal).

For these reasons, the Court finds that Counter-Plaintiffs' breach of contract allegations with respect to the five written agreements survive dismissal with respect to the counter-plaintiffs, listed above, who are parties or plausible intended beneficiaries to these agreements.

### c. The 2011 Agreement

Under the oral 2011 Agreement, allegedly entered into by Counter-Defendant and all Counter-Plaintiffs, Counter-Defendant agreed to (1) write a new studio album for HolyHell, Darkness Visible, that would contain ten songs; (2) produce cover art for the album; and (3) create a new website for HolyHell. Am. Countercls. ¶¶ 116–18. Counter-Defendant allegedly breached the 2011 Agreement by producing only three songs, creating no cover art or website, and failing to return company property acquired in connection with the Agreement. Id. ¶¶ 125, 191–93.

### i. Failure to Plead Parties

Counter-Defendant argues that Counter-Plaintiffs' allegations regarding breach of the 2011 Agreement should be dismissed because Counter-Plaintiffs state only that "Mr. Palomo and Counter[claim]-Plaintiffs entered into the 2011 Agreement," and that "it is entirely unclear which parties are the alleged 'Counter-Plaintiffs' . . . because that term is not defined within the Amended Counterclaims." Dismissal Mem. at 9 (first alteration in original) (quoting Am. Countercls. ¶ 186). The Court is unpersuaded that the reference to "Counter-Plaintiffs" is insufficiently definite to survive dismissal. Counter-Plaintiffs allege that the 2011 Agreement was between Counter-Defendant and each of the counter-plaintiffs. Counter-Defendant's assertion that this is "implausibl[e]," id. at 9, is irrelevant—at this stage of the inquiry, the Court accepts the truth of Counter-Plaintiffs' factual allegations.

*ii. Failure to Plead the Existence of Consideration*

Counter-Defendant argues that the allegation "that the '2011 Agreement was supported by adequate consideration in keeping with the usual and ordinary consideration exchanged between the parties' is patently insufficient to establish adequate consideration in support of this alleged agreement." Dismissal Mem. at 10 (quoting Am. Countercls. ¶ 190). Breach of contract allegations that "fail[] to provide any detail about the nature of the exchanged promises or consideration" are insufficient to survive a motion to dismiss. Integra FX3X Fund, L.P. v. Deutsche Bank, AG, No. 14-CV-8400, 2016 WL 7009057, at *3 (S.D.N.Y. Nov. 29, 2016).

The Court does not find Counter-Plaintiffs' allegations concerning consideration for the 2011 Agreement to be too vague to state a breach of contract claim. As they explain, the meaning of "adequate consideration in keeping with the usual and ordinary consideration exchanged between the parties" is illuminated by reference to the compensation Counter-Defendant received for his work under previous contracts. Resp. at 11–12. For instance, the 2011 Agreement concerned Counter-Defendant's work on a new HolyHell album, the graphic art associated with the album, and the creation of a new website for HolyHell. Am. Countercls. ¶¶ 186–87. Under the 2007 Agreement, which also governed Counter-Defendant's creation of a HolyHell album for Counter-Plaintiffs, Magic Circle Music promised to pay him $20,000 for his work. 2007 Agreement at 37–38. Therefore, the Court can plausibly infer what "the usual and ordinary consideration exchanged between the parties" means with respect to a contract governing Counter-Defendant's creation of a HolyHell studio album for Counter-Plaintiffs. The allegations of consideration supporting the 2011 Agreement are not extensive, but are sufficiently detailed to survive a motion to dismiss. Cf. Integra FX3X Fund v. Deutsche Bank, AG, No. 14-CV-8400,

14

2016 WL 1169514, at *3 (S.D.N.Y. Mar. 22, 2016) (granting motion to dismiss where "[t]he [c]omplaint simply fail[ed] to allege an exchange of promises"); Matana v. Merkin, 989 F. Supp. 2d 313, 319 (S.D.N.Y. 2013) (granting motion to dismiss where "[t]he Amended Complaint does not *anywhere* allege an exchange of promised or other consideration") (emphasis added).

For these reasons, the Court denies Counter-Defendant's Motion to Dismiss with respect to the 2011 Agreement.

## 2. Unjust Enrichment

Counter-Plaintiffs plead unjust enrichment in the alternative to their breach of contract counterclaim based on Counter-Defendant's alleged misappropriation of songs that he recorded for the Darkness Visible album while working for Counter-Plaintiffs. Am. Countercls. ¶¶ 221–230. "Under New York law, a claim for unjust enrichment consists of the following three elements: 'that (1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover.'" In re Hydrogen, LLC, 431 B.R. 337, 359 (S.D.N.Y. 2010) (quoting Carroll v. LeBouef, Lamb, Greene & MacRae, LLP, 623 F. Supp. 2d 504, 514 (S.D.N.Y. 2009)).

As an initial matter, it is possible for both the breach of contract and unjust enrichment counterclaims to survive dismissal. It is true that both the unjust enrichment counterclaim and the breach of contract allegations concerning the 2011 Agreement concern Counter-Defendant's alleged exploitation of Counter-Plaintiffs' audio recordings. It is also true that "a claim for unjust enrichment—a quasi-contract claim—applies only in the absence of a valid contract." Chen v. New Trend Apparel, Inc., 8. F. Supp. 3d 406, 422 (S.D.N.Y. 2014) (citing Beth Israel Med. Ctr.

v. Horizon Blue Cross & Blue Shield of N.J., Inc., 448 F.3d 573, 587 (2d Cir. 2006)). However, "New York permits the alternative pleading of breach of contract and unjust enrichment claims—and the survival of both claims at the motion to dismiss stage—where there is a bona fide dispute as to the existence of a contract." Sikarevich Family, LP, v. Nationwide Mut. Ins. Co., 30 F. Supp. 3d 166, 172 (E.D.N.Y. 2014). As discussed above, the parties dispute the existence of the 2011 Agreement. Therefore, although Counter-Plaintiffs "may not ultimately recover on both the breach of contract and unjust enrichment" counterclaims, both may survive at the motion to dismiss stage. Transcience Corp. v. Big Time Toys, LLC, 50 F. Supp. 3d 441, 452–53 (S.D.N.Y. 2014).

Turning to the merits of the unjust enrichment counterclaim, Counter-Defendant alleges that "Counterclaim-Plaintiffs utterly fail to allege that [he] was enriched." Dismissal Mem. at 12. He reasons that, although Counter-Plaintiffs allege that they advanced $160,000 "for use on the "Darkness Visible' project," Am. Countercls. ¶ 140, they never provided him with any of that money, Dismissal Mem. at 12.

However, this is not the basis of the unjust enrichment counterclaim. Rather, Counter-Plaintiffs allege that Counter-Defendant continued working on Darkness Visible tracks after he resigned, and posted on the internet a "revisited" version of a song that he initially recorded for the album while working for Counter-Plaintiffs. Am. Countercls. ¶¶ 222–26. Moreover, he also allegedly "registered Mexican copyrights for thirteen . . . compositions under the title 'Darkness Visible,'" and several of those compositions have the same titles as songs first recorded for Darkness Visible. Id. ¶ 227. To the extent that he has earned profits from his alleged exploitation of Counter-Plaintiffs' recordings, Counter-Defendant has not returned these profits to Counter-

Plaintiffs. Id. ¶ 228. Counter-Plaintiffs plausibly allege that Counter-Defendant wrongfully kept copies of their songs, promoted retouched versions of the songs as his own, and turned a profit. These allegations plausibly allege unjust enrichment and this counterclaim therefore survives dismissal.

### 3. Injunctive Relief

Counter-Plaintiffs allege that, in addition to other company property that Counter-Defendant has withheld, he refused to return their "trade secrets." Id. ¶¶ 205–06, 213. Counter-Plaintiffs further allege that Counter-Defendant "has wrongfully used the [t]rade [s]ecrets . . . in the development of his own musical career and the development of other third parties' musical careers," and that injunctive relief is necessary because "a money judgment could not adequately compensate Counter-Plaintiffs for the unknown amount of money they would have earned had they, not [Counter-Defendant], released 'Darkness Visible' and/or any other songs derived from [c]ompany [p]roperty and/or [t]rade [s]ecrets stolen by" Counter-Defendant. Id. ¶¶ 215, 219.

A claimant seeking permanent injunctive relief must establish:

> (1) that it will suffer an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserviced by a permanent injunction.

Beastie Boys v. Monster Energy Co., 87 F. Supp. 3d 672, 677 (S.D.N.Y. 2015).

Initially, the Court rejects Counter-Defendant's assertion that Counter-Plaintiffs misconstrue injunctive relief as an independent cause of action. Dismissal Mem. at 13–14. While it is true that injunctive relief is a remedy, not an independent ground for relief, O Zon Inc. v.

17

Charles, 272 F. Supp. 2d 307, 312 (S.D.N.Y. 2003), the request for injunctive relief here rests on Counter-Defendant's refusal to turn over trade secrets and company property, Resp. at 15. As Counter-Plaintiffs observe, this request is premised on their breach of contract and unjust enrichment counterclaims, not a standalone cause of action. Id.

However, the request for injunctive relief is improper because a monetary remedy is plainly adequate. The mere need to calculate lost profits from Counter-Plaintiffs' inability to release Darkness Visible or other songs that Counter-Defendant allegedly "revisited" after resigning does not render an award of monetary damages inadequate. While circumstances may exist where lost profits cannot be reasonably estimated, thus making injunctive relief potentially available, Counter-Plaintiffs fail to allege any facts indicating that such circumstances exist here. See Blank v. Pollack, 916 F. Supp. 165, 171 (N.D.N.Y. 1996) (holding that a complaint seeking injunctive relief "must allege facts sufficient to support a determination of irreparable harm" and "[t]he mere allegation of lost profits, i.e. economic damage, is insufficient to show irreparable harm") (citing Jackson Dairy, Inc. v. H.P. Hood & Sons, 596 F.2d 70, 72 (2d Cir. 1979)).

Counter-Plaintiffs' assertion that they are entitled to injunctive relief because Counter-Defendant has allegedly used trade secrets to advance his musical career is similarly unavailing. They allege only that Counter-Defendant is *using* their confidential information, not that he is publicly sharing the information. Am. Countercls. ¶¶ 215–16. In Faively Transport Malmo AB v. Wabtec Corporation, the Second Circuit explained that:

> A rebuttable presumption of irreparable harm may be warranted in cases where there is a danger that, unless enjoined, a misappropriator of trade secrets will disseminate those secrets to a wider audience . . . . Where a misappropriator seeks only to use those secrets—without further dissemination or irreparable impairment of

18

> value—in pursuit of profit, no such presumption is warranted because an award of damages will often provide a complete remedy. Indeed . . . the misappropriator will often have the same incentive as the originator to maintain the confidentiality of the secret in order to profit from the proprietary knowledge.

559 F.3d 110, 118–19 (2d Cir. 2009). Because Counter-Plaintiffs do not allege that Counter-Defendant disseminated their trade secrets, and because they provide no facts alleging that he is likely to disseminate trade secrets, monetary relief is an adequate remedy for the harms alleged.

Finally, the provisions in the 2007 and 2010 NDAs that "provide that counter-Plaintiffs are 'entitled to a temporary or permanent injunction' against [Counter-Defendant] to prevent" his use or disclosure of proprietary information, Am. Countercls. ¶¶ 214, do not support a request for injunctive relief. "[I]t is well settled in the Second Circuit that 'contractual language declaring money damages inadequate in the event of a breach *does not* control whether . . . injunctive relief is appropriate." A.X.M.S. Corp. v. Friedman, 948 F. Supp. 2d 319, 338 (S.D.N.Y. 2013) (quoting Baker's Aid v. Hussmann Foodservice Co., 830 F.2d 13, 16 (2d Cir. 1987)). This boilerplate contractual provision does not alter the Court's analysis.

For these reasons, the Court grants Counter-Defendant's Motion to Dismiss with respect to Counter-Plaintiff's request for injunctive relief.

### 4. *Leave to Replead*

Counter-Plaintiffs urge the Court to grant them an opportunity to replead any dismissed counterclaims, and cite Rojas v. Roman Catholic Diocese of Rochester, 557 F. Supp. 2d 387 (W.D.N.Y. 2008), for the proposition that "this circuit strongly favors liberal grant of an opportunity to replead after dismissal of a complaint under Rule 12(b)(6)." Resp. at 4. Although this proposition is true, deciding whether to dismiss an action with "leave to replead is within the

discretion of the district court." <u>Schindler v. French</u>, 232 F. App'x 17, 19 (2d Cir. 2007)

(summary order). Counter-Plaintiffs have had two attempts to properly allege their request for

injunctive relief and the dismissed portions of their breach of contract counterclaim. These

causes of action first appeared in Counter-Plaintiffs' Original Counterclaims. Original

Countercls. Counter-Plaintiff filed the present, more robust versions of these counterclaims on

April 17, 2017, Am. Countercls, after Counter-Defendant moved to dismiss the counterclaims,

Dkt. No. 29. The Court will not grant Counter-Plaintiffs leave to replead when they

"ha[ve] . . . been given ample prior opportunity to allege a [counter]claim." <u>In re Refco Capital</u>

<u>Mkts., Ltd. Brokerage Customer Sec. Litig.</u>, No. 07-CV-8686, 2008 WL 4962985, at *2

(S.D.N.Y. Nov. 20, 2008); <u>see also</u> <u>Estes v. Toyota Fin. Serv.</u>, No. 14-CV-1300, 2015 WL

3830350, at *6 (E.D.N.Y. June 22, 2015) (denying leave to replead where plaintiff had "already

been given an opportunity to replead her claims"); <u>L-7 Designs, Inc. v. Old Navy, LLC</u>, No.

09-CV-1432, 2010 WL 532160, at *2 (S.D.N.Y. Feb. 16, 2010) (denying leave to replead where

plaintiff "already had two bites at the apple, as it has already filed two complaints: the original

complaint . . . and the amended complaint").

**B.  Amendment Motion**

Counter-Plaintiffs' Amendment Motion seeks to add two new counterclaims: unfair

competition and libel per se. Amendment Mot. The Court addresses these counterclaims below,

and finds that granting leave to amend would be futile since neither counterclaim could survive a

motion to dismiss.

*1.  Unfair Competition*

To support their proposed unfair competition counterclaim, Counter-Plaintiffs reallege that Counter-Defendant "misappropriated the music constituting work product belonging to" Counter-Plaintiffs when he resigned. Dkt. No. 83-2 ("Proposed Second Amended Counterclaims") ¶ 141. Counter-Defendant argues that this proposed counterclaim could not survive a motion to dismiss because it is preempted by § 106 of the Copyright Act of 1976, 17 U.S.C. §§ 101 *et seq*. Amendment Opp'n. at 11–14. The Court agrees.

"In order for a state cause of action to survive [Copyright Act] preemption, it must have an 'extra element' beyond reproduction, preparation of derivative works, [or] distribution . . . , which 'changes the nature of the action so that it is qualitatively different from a copyright infringement claim.'" BanxCorp v. Costco Wholesale Corp., 723 F. Supp. 2d 596, 617 (S.D.N.Y. 2010) (quoting Gusler v. Fischer, 580 F. Supp. 2d 309, 316 (S.D.N.Y. 2008)). "[U]nfair competition and misappropriation claims grounded solely in the copying of a plaintiff's protected expression are preempted." Id. (alterations in original) (quoting Computer Assocs., Int'l, Inc. v. Altai, Inc., 982 F.2d 693, 717 (2d Cir. 1992)).

Counter-Plaintiffs' unfair competition counterclaim is premised on Counter-Defendant's exploitation of songs owned by Counter-Plaintiffs, Proposed Second Am. Countercls. ¶¶ 139–46, which is a "claim[] grounded solely in the copying of [Counter-Plaintiffs'] protected expression," BanxCorp., 723 F. Supp. at 617. While it is true that "unfair competition claims based upon breaches of confidential relationships, breaches of fiduciary duties and trade secrets" contain an extra element and can survive a Copyright Act preemption challenge, id. at 617, Counter-Plaintiffs allege no facts to support these theories. The two NDAs designate as confidential "any information regarding the income, expenses, procedures or customers of Magic

Circle . . . or . . . gained from any intimacies concerning any individuals associated with . . . Magic Circle," but do not designate as confidential information relating to unreleased music tracks. 2007 NDA at 43; 2010 NDA at 56.

Additionally, Counter-Plaintiffs could not argue that Counter-Defendant's "misappropriat[ion of] the tracks," Proposed Second. Am. Countercls. ¶ 144, constitutes misappropriation of a trade secret. "[A] trade secret cannot be comprised of matters completely disclosed by the market good," Demetriades v. Kaufmann, 698 F. Supp. 521, 526 (S.D.N.Y. 1988). An audio track is, as Counter-Defendant observes, "fully disclosed when the song is played," Amendment Opp'n at 12.

Finally, Counter-Plaintiffs maintain that their unfair competition counterclaim is not preempted because "a copyright infringement claim requires that a party assert in the pleadings that he has received an actual certificate of registration or its denial from the Copyright Office," and Counter-Plaintiffs "do not assert that they have filed or received an actual certificate of registration of copyright." Dkt. No. 83-6 ("Amendment Memorandum") at 5–6. However, the mere absence of an allegation that Counter-Plaintiffs filed a certificate of registration does not make their counterclaim "qualitatively different from a copyright infringement claim," BanxCorp, 723 F. Supp. at 617. See Quadrille Wallpapers & Fabric, Inc. v. Pucci, No. 10-CV-1394, 2011 WL 3794238, at *4 (N.D.N.Y. Aug. 24, 2011) (Kahn, J.) (observing that "'[e]lements . . . which alter the action's scope but not its nature,' do not constitute extra elements that would" enable an unfair competition claim to survive a preemption challenge (quoting Computer Assocs., 982 F.2d at 717)). Counter-Plaintiffs' reliance on Kelley v. Universal Music Group, No. 14-CV-2968, 2016 WL 5720766 (S.D.N.Y. Sept. 29, 2016),

Amendment Mem. at 5–6, is misplaced. That case never suggests that an unfair competition claim may survive a preemption challenge simply because the claimant fails to allege that they filed a certificate of registration with the Copyright Office. See generally Kelley, 2016 WL 5720766.

In sum, Counter-Plaintiffs' proposed unfair competition counterclaim is preempted by the Copyright Act because it is premised only on Counter-Defendant's exploitation of music tracks owned by Counter-Plaintiffs, and fails to plead an extra element. Therefore, the Court will not grant Counter-Plaintiffs leave to add an unfair competition counterclaim because amendment would be futile.

### 2. Libel Per Se

Counter-Plaintiffs' libel per se claim is supported by written communications by Counter-Defendant that Counter-Plaintiffs uncovered during discovery in this action that allegedly defame Counter-Plaintiffs. Amendment Mem. at 6–9. However, "[u]nder New York law, a defamation claim must be asserted within one year of the date on which the defamatory statement was published or uttered to a third party, even if it would have been impossible for the plaintiff to discover the injury at that time." Walker v. City of Utica, No. 12-CV-1587, 2015 WL 1013865, at *13 (N.D.N.Y. Mar. 9, 2015) (citing N.Y. C.P.L.R. § 215(3)). The most recent of Counter-Defendant's allegedly defamatory communications was an email sent on October 13, 2015. Amendment Mem. at 9. Counter-Plaintiffs' Original Counterclaims were filed on February 13, 2017. Original Countercls. Therefore, even if the Court found that the defamation counterclaim related back to this date, see Fed. R. Civ. P. 15(c) (outlining circumstances required for "[a]n amendment to a pleading [to] relate[] back to the date of the original pleading), this is still over a

year since the most recent allegedly defamatory statement was published. Therefore, the Court denies Counter-Plaintiffs leave to amend to add a libel per se counterclaim because the amendment would be time-barred and, thus, futile.

## V.    CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Counter-Defendant's Motion to Dismiss (Dkt. No. 45) is **GRANTED in part** and **DENIED in part**; and it is further

**ORDERED**, that the following portions of Counter-Plaintiffs' breach of contract counterclaim survive Counter-Defendant's Motion: (1) breach of the 2011 Agreement; (2) allegations regarding breach of the 2007, 2009, and 2010 Agreements made by counter-plaintiff Magic Circle Music, Ltd.; (3) allegations regarding breach of the 2007 NDA made by counter-plaintiffs Magic Circle Music, Ltd., God of Thunder Productions, Ltd., and Circle Song Music, LLC; and (4) allegations regarding breach of the 2010 NDA made by counter-plaintiffs Magic Circle Music, Ltd., God of Thunder Productions, Ltd., Circle Song Music, LLC, and Magic Circle Films International, Ltd.; and it is further

**ORDERED**, that all other allegations regarding breach of the 2007, 2009, and 2010 Agreements and of the 2007 and 2010 NDAs and Counter-Plaintiffs' counterclaim for injunctive relief are **DISMISSED**; and it is further

**ORDERED**, that (1) the unjust enrichment counterclaim survives Counter-Defendant's Motion; and it is further

**ORDERED**, that Counter-Plaintiffs' Amendment Motion (Dkt. No. 83) is **DENIED**; and it is further

24

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and

Order on all parties pursuant to the Local Rules.

**IT IS SO ORDERED.**


DATED:        December 04, 2017
             Albany, New York

Lawrence E. Kahn
U.S. District Judge